1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MARIO B. QUINONES and MARIO I.
QUINONES,

                    Plaintiffs,

v.

CHASE BANK USA, N.A.,

                    Defendant.

Civil No.    09cv2748-AJB(BGS)

**ORDER
1) GRANTING DEFENDANT'S
AMENDED MOTION FOR SUMMARY
JUDGMENT AS TO MARIO I.;
2) DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AS TO
ITS COUNTERCLAIM AGAINST
MARIO I. FOR BREACH OF
CONTRACT;
3) GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT AS TO ITS
COUNTERCLAIM AGAINST MARIO I.
FOR MONEY HAD AND RECEIVED;
AND
4) GRANTING DEFENDANT'S
MOTION TO ENFORCE JUDGMENT
ENTERED PURSUANT TO A RULE 68
OFFER OF JUDGMENT**

**[Doc. Nos. 63, 71, 98.)**

    Plaintiffs Mario B. Quinones ("Mario Senior") and Mario I. Quinones ("Mario Junior") filed a

first amended complaint alleging claims of improper debt collection on two credit card accounts by

Defendant Chase Bank U.S.A., N.A. ("Chase").  Chase also filed an amended counterclaim alleging

breach of contract and money had and received as to Mario Junior's use of the two credit card accounts.

On November 19, 2010, Defendant filed a motion for summary judgment, or in the alternative, to

determine material facts not genuinely at issue as to the claims brought by Mario I. in the first amended

1

complaint and as to the counterclaims brought by Chase against Mario I. (Dkt. No. 63.) On December 17, 2010, Defendant filed an amended motion for summary judgment making a change in the caption page. (Dkt. No. 71.) Plaintiffs filed an opposition on January 14, 2011 and Chase filed a reply on January 21, 2011. (Dkt. Nos. 84, 90.) On February 16, 2011, Defendant filed a motion to enforce judgment entered pursuant to a Rule 68 offer of judgment as to Mario Senior. (Dkt. No. 98.) On March 14, 2011, Mario Senior filed an opposition. (Dkt. No. 99.) Chase filed a reply on March 21, 2011. (Dkt. No. 100.)

The motion is submitted on the papers without oral argument, pursuant to Civil Local Rule 7.1(d)(1). After a review of the briefs, supporting documentation, and applicable law, the Court GRANTS Defendant's amended motion for summary judgment as to Mario I.; DENIES Defendant's amended motion for summary judgment as to its counterclaims against Mario I. for breach of contract; GRANTS Defendant's amended motion for summary judgment as to its counterclaim against Mario I. for money had and received; and GRANTS Defendant's motion to enforce the Rule 68 offer of judgment as to Mario B.

**Procedural Background**

On December 9, 2009, this case was removed from state court. (Dkt. No. 1.) On December 11, 2009, Defendant filed an answer to the complaint and a counterclaim against Mario I. (Dkt. No. 4.) Pursuant to a joint motion to amend the complaint, a first amended complaint was filed on February 12, 2010. (Dkt. No. 14.) In the first amended complaint, Plaintiffs Mario Senior and Mario Junior allege seven causes of action against Defendant for violation of the Fair Debt Collection Practices Act ("FDCPA"), violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), negligence, declaratory relief, injunctive relief, violation of the Fair Credit Reporting Act ("FCRA"), and violation of the California Consumer Credit Reporting Agencies Act ("CCRAA"). (Dkt. No. 14.) On February 26, 2010, Defendant filed a motion to dismiss the first cause of action in the first amended complaint. (Dkt. No. 15.) On June 28, 2010, the Court granted Defendant's motion to dismiss the first cause of action under the FDCPA. (Dkt. No. 27.)

On October 25, 2010, Defendant Chase filed a first amended counterclaim against Mario I.

2

alleging breach of contract and money had and received as to two credit card accounts. (Dkt. No. 55.) On November 8, 2010, Mario I. filed an answer to the first amended counterclaim. (Dkt. No. 60.) On the same day, Mario Senior accepted a Rule 68 offer of judgment which was filed with the Court. (Dkt. No. 61.) On November 10, 2010, the Clerk of Court entered judgment "in favor of plaintiff Mario B. Quinones against defendant Chase Bank USA, N.A. in the amount of $1,001.00, plus reasonable attorney fees and costs." (Dkt. No. 62.)

On November 19, 2010, Defendant filed a motion for summary judgment, or in the alternative, to determine material facts not genuinely at issue. (Dkt. No. 63.) Defendant also filed an *ex parte* application to file documents in support of its motion for summary judgment under seal which was granted by the Court after Plaintiffs filed their opposition on December 1, 2010. (Dkt. No. 69.)

On December 17, 2010, Defendant filed an amended motion for summary judgment adding the percentage of interest owed on the remaining debt for the damages its seeks in the counterclaim in the caption page.[1]  (Dkt. No. 71.)  On December 27, 2010, Plaintiff Mario B. signed and filed an Acknowledgment of Partial Satisfaction of Judgment stating that he had been paid $1,001.00 and "[t]he judgment otherwise remains unsatisfied and unpaid including, without limitation, the reasonable attorneys' fees and costs to Mario B. Quinones." (Dkt. No. 72.)  Plaintiff filed an opposition to the motion for summary judgment on January 14, 2011 and Chase filed a reply on January 21, 2011. (Dkt. Nos. 84, 90.)

On February 16, 2011, Defendant filed a motion to enforce judgment entered pursuant to a Rule 68 offer of judgment. (Dkt. No. 98.) On March 14, 2011, Mario Senior filed an opposition. (Dkt. No.

---

[1]In their opposition, Plaintiffs argue the Court should deny the motion for summary judgment because Chase filed an amended motion for summary judgment without court approval. They argue that the amended notice seeks different relief than the original motion.  In its reply, Chase contends that the amendment did not change the substantive nature of the motion but only added a specific claim for interest and attorney's fees and costs concerning the counterclaims.

The amended motion added the specific rate of interest and attorney's fees and costs as to the counterclaims in the caption page of the motion. The Court notes that the specific rate of interest and attorney's fees and costs are already pleaded in the counterclaim.  Therefore, the amendment  merely clarified what was sought in the counterclaim. Moreover, the amendment did not prejudice Plaintiffs as there was sufficient time to file an opposition. Accordingly, the Court concludes that the amendment does not warrant denying the motion.

1  99.)  Chase filed a reply on March 21, 2011.  (Dkt. No. 100.)  On March 22, 2011, the case was

2  transferred to the undersigned judge.

3  **Factual Background**

4  **A.    Mario Junior's Facts**

5          Mario B. Quinones ("Mario Senior") is the father of Mario I. Quinones ("Mario Junior") and

6  they live at the same address.  Mario Junior opened a credit card with Chase in mid-2007 with an

7  account number ending in 6183 ("6183 account") and takes sole responsibility for that account.[2]  (First

8  Am. Compl. ¶ 8; Krog Decl., Ex. C.)  In July 2007,[3] Mario Junior stated that he received through the

9  mail an invitation to apply for a Chase credit card.  (Mario Junior Decl. filed on 1/14/11 ¶ 2; Krog.

10  Decl., Ex. A, Mario Junior Depo. at 20:13-24.)  He testified that the invitation was addressed to "Mario

11  Quinones" and he did not question whether it was addressed to him or his father.  (Krog. Decl., Ex. A,

12  Mario Junior Depo. at 21:9-15.)  When Mario Junior applied for the credit card, he stated that he

13  provided his name, address, social security number and work information and mailed it in.  (Id. at 21:21-

14  22; 22:1-4.)  He does not recall whether he put in his middle initial.  (Id. at 10-13.)  He testified that his

15  mother's maiden name is Nieva and his father's mother's maiden name is Bon.  (Id. at 28:5-6; 16-22.)

16  He testified that he did not provide Chase with his father's social security number, maiden name or

17  father's date of birth.  (Id. at 32:1-9.)  He stated that he did not apply for any other credit cards from

18  September 2007 to December 2007 or in 2008.  (Id. at 53:23-55:12.)

19          Mario Junior received a Chase credit card with a credit limit of about $3,500.  (Mario Junior

20  Decl. filed 1/14/11 ¶ 3; Krog Decl., Ex. A, Mario Junior Depo. at 87:17-19.)  He stated that he used the

21  credit card to make purchases of less than $4,000 and made payments on the purchases.  (Mario Junior

22

23          [2]The parties dispute the manner in which Mario Junior opened the Chase credit card with an
account number ending in 6183.  Mario Junior testified that he received a credit card invitation from
24  Chase in the mail and filled it out and mailed it back.  (Krog Decl., Ex. A, Mario I.'s Depo. at 20:13-24;
18-22.)  Chase states that Mario Junior applied for the credit card online through the internet.  (Trimmer
25  Decl, Ex. A filed under seal p. CH0001.)  However, the manner in which Mario Junior opened the credit
card with an account number ending in 6183 is not relevant to the issues in this motion.

26          [3]The dates that both parties claim opened the credit card differ; however, the parties do not
dispute that the credit card with account number 6183 was issued and is one of the accounts at issue.
27

28                                                          4

Decl. filed 1/14/11 ¶ 3; Krog Decl., Ex. A, Mario Junior Depo. at 88:1-8.)  Mario Junior stated that he used the credit card around two times a week from September 2007 to January 2008. (Krog. Decl., Ex. A, Mario Junior Depo. at 151:2-19.)  He used the Chase credit card to make payments to his children's school, to make purchases at coffee shops, at gas stations, and to make repairs to his vehicles  (Id. at 59:16-18; 154:7-11; 157:16-18.)  He also used the account to write a check for cash to himself.  (Id. at 179:13-24.)

Mario Junior initially made timely monthly payments online on the Chase credit card account when he started using it.  (Id. at 65:4-9; 73:10-13.)  He stopped making payments when Chase no longer allowed him to make payments online because the accounts were changed and access was denied.  (Id. at 77:8-24.)

Mario Junior testified that he did not check his credit score or credit report in 2007 or 2008.  (Id. at 53:8-10.)  He further stated that he never saw credit reports and never asked about it.  (Id. at 204:10-11.)  He has not been denied credit because of Chase because he has not applied for anything else since the incident.  (Id. at 204:20-205:1.)

### 1.    Debt Collection Efforts

In his declaration, Mario Junior states that around July 2008, Chase engaged in improper debt collection against his father and himself which included many collection telephone calls and letters from Chase and Chase's representatives.  (Mario Junior Decl. filed 1/14/11 ¶ 5.)  He also states that his father and he informed Chase that they were represented by counsel; however, Chase ignored that information and engaged in improper debt collection which included letters from Chase to his father and him, letters from Chase's attorneys, and subsequently collection efforts from Palisades Collection on behalf of Chase.  (Mario Junior Decl. filed 1/14/11 ¶ 7.)

At his deposition, Mario Junior testified that he was involved in a three-way call with a collection company but stated that the call was for his father.  (Krog Decl, Ex. A, Mario Junior Depo. at 224:15-22; Krog Decl., Ex B, Mario Senior Depo. at 36:17-37:1.)  A day or two after the three-way telephone conversation, Mario Junior called Chase's customer service and advised them of the debt collector call.  (Krog Decl., Ex. A, Mario Junior Depo. at 238:8-12; 239:23-241:1.)  He stated that Chase

1   acknowledged that it was their collection agency and he did not recall if he provided any personal

2   information.  (<u>Id.</u> at 243:4-24.)  The only other thing he recalls from the call was that Chase provided

3   him with a contact telephone number for Chase's collection agency.  (<u>Id.</u> at 241:10-22.)  He testified

4   that after that conversation, he had nothing else to do with Chase.  (<u>Id.</u> at 245:2-8.)

5          Mario Junior testified that Chase never called the house specifically to get in touch with him.

6   (<u>Id.</u> at 264:7-9.)  The couple of time when Mario Junior answered the phone, Chase refused to talk with

7   him.  (<u>Id.</u> at 10-22.)  Mario Junior also received a letter from Chase dated July 23, 2008 which was

8   specifically addressed to him regarding the account ending in 5520 requesting his assistance because

9   Chase had information that the account may belong to him.  (<u>Id.</u> at 260:25-261:9; Storage Decl., Ex. A.)

10  **B.     Mario Senior's Facts**

11         Mario Senior testified that he has never had or applied for a Chase credit card account.  (Krog

12  Decl., Ex. B, Mario Senior Depo. at 29:9-13.)  Mario Senior first received a nasty call from a collection

13  agency for Chase in July 2008.  (Krog Decl., Ex. B, Mario Senior Depo. at 31:25; 32:1-11; 34:16-19.)

14  He told the person on the telephone that he was not involved with the bills and gave her his wife's work

15  phone number.  (<u>Id.</u> 33:12-14.)  When the collection company called his wife, his wife told the woman

16  on the phone that they did not have a Chase account.  (<u>Id.</u> 35:1-5.)  The woman on the phone stated that

17  Mario Senior had a Chase account and was cheating on her with another woman and that's where he

18  spent the money.  (<u>Id.</u>)  Mario Senior's wife mentioned that their son is the only one with a Chase

19  account.  (<u>Id.</u> at 36:11-14.)  Mario Senior's wife informed Mario Senior that the only person who had

20  a Chase account was their son.  (<u>Id.</u> at 35:24-36:1.)  Later that day, Mario Junior contacted the collection

21  agency and then placed Mario Senior in a three-way call.  (<u>Id.</u> at 36:17-23.)  According to Mario Senior,

22  the collection person made "all sorts of accusations" and insisted that they start paying off the debt.  (<u>Id.</u>

23  at 37:2-19.)

24         Mario Senior also talked with an investigator from Chase.  (<u>Id.</u> at 46:23-47:1-2.)  Mario Senior

25  received about four to five calls before he contacted his attorney.  (<u>Id.</u> at 46:4-19.)  After telling the

26  Chase investigator that he had not opened the account, the investigator said she would look into it.  (<u>Id.</u>

27  at 47:4-9.)  The next day, the investigator told Mario Senior that her investigation had determined that

28                                                                     6

1   he opened the account.  (Id.)  The investigator told him that Chase had enough information to put his

2   son in jail if he did not pay for the account.  (Id. 47:14-17.)  Subsequent to receiving three phone calls

3   from the collection agency and from the Chase investigator, he informed Chase that he had hired an

4   attorney.  (Id. at 66:5-8.)

5        Mario Senior was informed by Chase that since it was his information on the account, he would

6   be responsible for the account.  (Id. at 66:14-15.)  Chase also informed him that he needed to file a

7   police report regarding the fraudulent applications for the account but he did not file a report because

8   he believed Chase had created the problem.  (Id. at 87:13-18.)

9        On July 29, 2008, Douglas Jaffee, attorney for the Plaintiffs sent a letter to Chase advising that

10  he represented both Mario Senior and Mario Junior.  (Krog Decl., Ex. C, P63-P65.)  Mr. Jaffee

11  confirmed that account 6183 "is the sole responsibility of Mario I. Quinones, the adult son of Mario B.

12  Quinones," and denied that either of them had responsibility for the 5520 account.  (Id.)

13  **C.    Chase's Facts**

14       Chase maintains records for credit card accounts it issues that include the application,

15  cardmember agreements, TSYS notes (a computerized diary of communications with customers and

16  third persons), billing statements, correspondence, records of application processing, and records of

17  credit reporting.  (Trimmer Decl. ¶ 2; see also Trimmer Decl., Ex. A filed under seal.)  According to

18  Chase's records, it received an internet application on September 3, 2007 from "Mario Quinones" who

19  gave his date of birth as XXXX, 1951; social security number as "XXX-XX-5827;" his address as "3984

20  T Street, San Diego, CA 92113;" and his mother's maiden name as "Bon."  (Trimmer Decl. ¶  3;

21  Trimmer Decl., Ex. A, p. CH0001.)  No middle initial was given on the application.  (Id.)  Based on this

22  information, the account was opened up under Mario Senior's birthday, social security number and

23  mother's maiden name, "Bon."  (Trimmer Decl., Ex. A CH0001.)  Chase's verification process

24  confirmed that all information matched Mario Senior.  (Trimmer Decl. ¶ 3.)  Chase also pulled a credit

25  report on the applicant, identifying him with the credit reporting agencies by the name and social

26  security number on the application.  (Trimmer Decl. ¶ 4.)  The credit report showed an excellent credit

27  history.  (Trimmer Decl. ¶ 5; Trimmer Decl., Ex. A, pp. CH0149-CH0161.)  According to Chase's

28

records, the account was opened on September 3, 2007 with a credit card account number ending in 6183 with an initial line of credit of $3,000.  (Trimmer Decl. ¶ 5-6; Trimmer Decl., Ex. A, p. CH0297.)  The card and cardmember agreement were sent to Mario Quinones on September 5, 2007.  (Trimmer Decl. ¶ 5-6; Trimmer Decl., Ex. A, p. CH0297.)

Payment on the account was made through December 31, 2007.  (Trimmer Decl., Ex. A, p. CH0063.)  As of January 9, 2008, the account had a balance of $3,646.76.  (Id.)  On July 3, 2008, a payment was received for $100.00.  (Id. at CH0075.)  As of August 9, 2008, the account had a past due balance of $4,812.06.  (Id. at CH0077.)

On November 5, 2007, Chase received an internet application providing the same name, social security number, address and mother's maiden name as the previous application.  (Trimmer Decl. ¶ 7; Trimmer Decl., Ex. A at CH0022.)   At the time, the 6183 account was in good standing and a credit report verified the name, address and social security number on the application and revealed excellent credit.  (Id. ¶ 7; Trimmer Decl., Ex. A at CH0162-CH0207.)  Therefore an account was opened with an account number ending in 5520 and a card and cardmember agreement were sent to "Mario Quinones" on November 7, 2007.  (Trimmer Decl. ¶ 8; Trimmer Decl., Ex. A at CH0300.)

The initial line of credit was $9,500.00.  Charges were made beginning on November 9, 2007 through January 19, 2008.  (Id. ¶ 8.)  A payment was received on the 5520 account on December 31, 2007 and a final payment of $100.00 on July 3, 2008.  (Trimmer Decl. ¶  8; Trimmer Decl, Ex. A at p. CH0101; CH0115.)  As of February 4, 2008, the balance on the account was $9,733.71 and on July 4, 2008, the past due balance was $11,221.71.  (Trimmer Decl. ¶ 8.; Trimmer Decl., Ex. A. at p. CH0105; CH0115.)

### 1.     Chase's Collection Efforts

The TSYS notes concerning the 5520 account show that a phone call was made to Mario Senior on July 3, 2008 where he advised Chase that his wife would call back about the account.  (Trimmer Decl. ¶ 10; Trimmer Decl., Ex. A at p. CH0038.)  On July 5, 2008, the TSYS notes show another call was made and the customer verified his social security number, date of birth, address and the date he opened the account but the customer denies that this was his account.  (Trimmer Decl. ¶  10; Trimmer

1   Decl., Ex. A at p. CH0036-CH0037.)  On July 12, 2008, another call was made and Mario Senior denied

2   having this credit card account.  (Trimmer Decl. ¶ 10; Trimmer Decl., Ex. A. at p. CH0036.)  On July

3   14, 2008, Mario Senior stated that the account might be his son's.  (Trimmer Decl. ¶ 10; Trimmer Decl.,

4   Ex. A at p. at CH0034.)

5          On July 14, 2008, a call was made on the 6183 account where Mario Senior stated that this was

6   not his account.  He claimed the account was a product of a fraudulent application.  (Trimmer Decl. ¶

7   11; Trimmer Decl., Ex. A at p. CH0012.)

8          On July 16, 2008, both credit cards accounts were transferred to Franceen Storage, the fraud

9   investigator.  (Storage Decl. ¶ 2.)  On July 16, 2008, Storage contacted Mario Senior and asked which

10  school his son's children went to and Mario Senior replied they went to St. Rita's School.[4]  (Id. ¶ 4.)

11  She also asked Mario Senior to send a police report to Chase reporting the allegedly fraudulent

12  applications.  (Id. ¶ 5.)  Mario Senior stated that he wanted a couple days to think about it and wanted

13  to talk with his son before doing anything.  (Id.)

14         In the meantime, Storage investigated and learned that payments were made on both accounts

15  from Orange County Credit Union.  (Id. ¶ 7.)  On July 18, 2008, Storage contacted the credit union and

16  confirmed that "Mario Quinones" had an account with them.  (Id.)  She also called St. Rita's School and

17  confirmed that Mario Junior made payments to the school for his children with the Chase credit cards.

18  (Id. ¶ 6.)  She never received a police report or any further information from Mario Senior as to the

19  accounts.  (Id. ¶ 8.)  On July 29, 2008, she talked with Mario Senior who stated that all communications

20  were to go to his attorney, Douglas Jaffee.  (Id.)

21         On July 23, 2008, Storage sent Mario Junior a letter regarding the account number ending in

22  5520 requesting assistance because Chase had information that the account belonged to him.  (Id. ¶ 10;

23  Storage Decl., Ex. A.)  Mario Junior did not respond to her letter.  (Id.)  According to Storage, her

24  investigation confirmed that Mario Junior had used the accounts and made payments on it.  (Id. ¶ 11.)

25  Mario Senior never confirmed that his son had used the accounts and never stated that he had not

26  _____

27         [4]The Court notes that the TSYS documents the telephone call to Mario Senior on July 18, 2008.
    (Trimmer Decl., Ex. A. at p. CH0033.)

28                                            9

1   authorized his son to open an account using his information.  (Id.)  On July 30, 2008, Storage sent letters

2   to Mario Senior for both accounts informing him that Chase would continue to hold him responsible for

3   both accounts and was transferring the balances to new accounts.  (Id.; Exs. B, C.)

4         On July 29, 2008, the 6183 account was closed and the balance transferred to a new account

5   ending in 5931.  (Trimmer Decl. ¶ 17; Trimmer Decl., Ex A at p. CH0007.)  The 5520 account was also

6   closed and the balance transferred to a new account number ending in 3589.  (Trimmer Decl. ¶ 17;

7   Trimmer Decl., Ex. A at p. CH0028.)

8         Because both accounts were opened using Mario Senior's date of birth and social security

9   number, the accounts were only reported to Mario Senior's credit reports and reporting of both accounts

10   has been deleted.  (Trimmer Decl. ¶ 19.)  Chase was never provided with Mario Junior's personal

11   information and neither account was ever reported to Mario Junior's credit reports.  (Trimmer Decl. ¶

12   20.)  Chase also states that no collection letters were ever sent to Mario Junior.  (Trimmer Decl. ¶ 22.)

13   Chase never told Mario Junior that it was holding him responsible for either account.  (Trimmer Decl.

14   ¶ 18.)  Mario Junior produced two credit reports dated September 17, 2008 which show that neither

15   accounts were reported to Mario Junior's credit report.  (Krog Decl., Ex. D, P17-P35.)

16         In May 2009, Chase retained Mann Bracken, LLP, a law firm to collect the debt due on the

17   account ending in 5520 from Mario Senior.  (Trimmer Decl. ¶ 21.)  Also, Chase retained the law firm

18   of Frederick J. Hanna & Associates, PC to collect the debt due on the 6183 account from Mario Senior.

19   (Id.)  On October 20, 2009, Chase sold the account ending in 5520 (later changed to 3589) to Palisades

20   Collection, LLC.  (Dkt. No. 86, Ex. A.)

21   **Discussion**

22   **A.**    **Legal Standard for Motion for Summary Judgment**

23         Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually

24   unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of

25   every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986).  Summary judgment is

26   appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together

27   with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

28

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is material when it affects the outcome of the case.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  <u>Celotex Corp.</u>, 477 U.S. at 323.  The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial.  <u>Id.</u> at 322-23.  If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'"  <u>Celotex</u>, 477 U.S. at 324.  If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law.  <u>Id.</u> at 325.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." <u>Fontana v. Haskin</u>, 262 F.3d 871, 876 (9th Cir. 2001).  The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact.  <u>Anderson</u>, 477 U.S. at 255.

Defendant moves for summary judgment on the remaining causes of action as to Mario Junior in the first amended complaint.  These include the claims for the RFDCPA, negligence, declaratory relief, injunctive relief, FCRA and the CCRAA.  Defendant also moves for summary judgment on its counterclaims for breach of contract and money had and received against Mario Junior.

**B.     Rosenthal Fair Debt Collection Practices Act, Cal. Civil Code Section 1788.1.**

The Robbins-Rosenthal Fair Debt Collection Practices Act ("RFDCPA") "like its federal counterpart, is designed to protect consumers from unfair and abusive debt collection practices." <u>Robinson v. Managed Accts. Receivable Corp.</u>, 654 F. Supp.2d 1051, 1060 (C.D. Cal. 2009) (citing Cal.

1    Civ. Code § 1788.1).   The RFDCPA prohibits unfair or deceptive acts or practices in the collection of

2    consumer debts and provides for recovery of actual damages for violations and penalties for willful

3    violations.   Cal. Civil Code § 1788 *et seq*.   Under RFDCPA, "'debt collection'" means any act or

4    practice in connection with the collection of consumer debts. Cal. Civil Code § 1788.2(b). Specifically,

5    the RFDCPA prohibits threats, obscenity, false or misleading communications in collecting or

6    attempting to collect a debt from a consumer.  Id. §§ 1788.10 - 1788.16.

7         Chase argues that the RFDCPA does not apply to Mario Junior because no collection

8    communications were ever addressed or directed to him.  Defendant states that the only communications

9    Mario Junior ever had about the accounts were a three-way call with his father and a collection agency

10   in July 2008, and a letter from Chase dated July 23, 2008 requesting his assistance with the fraud

11   investigation for the account number ending in 5520.   Moreover, Defendant argues that Mario Junior

12   admitted that he received no debt collection communications after a call he made to Chase to advise

13   them of the debt collector call.  (Krog Decl., Ex. A, Mario Junior Depo. at 245:2-8.)

14        In opposition, Mario Junior provides a declaration summarily stating that in July 2008, Chase

15   started engaging in improper debt collection against his father and him which included many collection

16   telephone calls and letters from Chase and its representatives.  (Mario Junior Decl. ¶ 5.)  He further

17   states that "[d]espite being informed that my father and I were represented by counsel, Chase ignored

18   the direction and engaged in improper debt collection directly against my father and me.  That included

19   subsequent letters from Chase to my father and me, subsequent letters from Chase's attorneys to my

20   father and me, and subsequent collection phone calls from Palisades Collection, LLC on behalf of

21   Chase.  (Id. ¶ 7.)

22        Mario Junior provides summary conclusions that Chase engaged in improper debt collection

23   against both his father and himself.  The instant motion for summary judgment concerns only the claims

24   brought by Mario Junior.   In his opposition, Mario Junior does not separate or point to specific

25   collection efforts made against him.  Throughout the opposition, Mario Junior alleges collection acts

26   against his father and him.  Looking at the evidence in the motion, most of the collection activities were

27   directed at Mario Senior since all the personal information on the credit cards was in his name and

28
                                          12

1   Chase held him responsible for those accounts.  Mario Junior fails to provide facts as to specific

2   unlawful debt collection practices toward him.  He does not provide specific dates, the frequency, timing

3   or manner of Defendant's allegedly unlawful collection practices.  Under the summary judgment

4   standard, Mario Junior has failed to "designate specific facts showing that there is a genuine issue for

5   trial." Celotex, 477 U.S. at 324.

6         Moreover, the Court questions whether the two alleged acts of collection fall under the RFCPA.

7   First, the three-way telephone call between Mario Senior, Mario Junior and the collection agency was

8   initiated by Mario Junior.  (Krog Decl., Ex. B, Mario Senior Depo. at 36:17-23.)  Mario Senior testified

9   that Mario Junior contacted the collection agency and then called Mario Senior in a three way call.  (Id.)

10   In addition, the TSYS notes show an incoming call from a "Mario Quinones" on July 14, 2008.

11   (Trimmer Decl., Ex. A at p. CH0034-CH0035.)  It appears that the three-way phone call was initiated

12   by Plaintiffs and therefore would not constitute an improper collection phone call by Chase.  Moreover,

13   Mario Junior provides no details as to the content of that call for the Court to determine whether the call

14   was threatening or harassing.

15         As to the second alleged communication, Plaintiff argues that even though Chase was informed

16   that Mario B. and Mario I. were represented by counsel, Chase ignored the direction and continued to

17   send letters to Mario B. and Mario I.  Franceen Storage, the fraud investigator at Chase, wrote a letter

18   to Mario I. on July 23, 2008 regarding account number ending in 5520.  (Storage Decl., Ex. A.)  It was

19   not until July 29, 2008, that Douglas Jaffee, attorney for the Plaintiffs sent a letter to Chase advising that

20   he represented both Mario Senior and Mario Junior.  (Krog Decl., Ex. C, P63-P65.)  According to the

21   TSYS on both accounts, Chase received the letter from Mr. Jaffee on August 7, 2008 and a cease and

22   desist status was initiated on that date.  (Trimmer Decl., Ex. A at p. CH0006, CH0027.)

23         According to the RFCPA, a debt collector may not initiate communications with the debtor

24   regarding the consumer debt "when the debt collector has been previously notified in writing by the

25   debtor's attorney that the debtor is represented by such attorney with respect to the consumer debt . .

26   . ." Cal. Civil Code § 1788.14(c).  Here, Plaintiffs' attorney's letter was dated July 29, 2008.  (Krog

27   Decl., Ex. C.)  Therefore, the letter dated July 23, 2008 does not constitute improper debt collection

28

13

1    under the RFDCPA.  Since Chase was not yet notified by Plaintiff's attorney that they were represented

2    by counsel, no violation of section 1788.14(c) occurred.

3         Mario Junior also alleges that Chase's attorneys engaged in improper debt collection against his

4    father and him but does not state who the letters were directed to.  On May 7, 2009, Chase's attorneys,

5    two different law firms concerning the two different account numbers, wrote a debt collection letter to

6    "Mario Quinones" even though they were represented by counsel.  (Krog Decl., Exs. E, F.)  Defendant

7    argues that these letters were sent to Mario Senior, not Mario Junior.  Chase contends that since Mario

8    Senior was the cardmember of record and informed him of such during a telephone call, the letters were

9    directed to him.  In opposition, Plaintiffs state that Mario Senior and Mario Junior received "subsequent

10   letters from Chase's attorneys to my father and me. . . ."  (Mario I. Decl. ¶ 7.)  His declaration fails to

11   state that the letters were directed to him, and not his father.  Accordingly, the Court concludes that

12   Mario Junior has not shown there is a genuine issue of material fact as to whether the letters sent to

13   Mario Quinones from the two law firms were sent to him.

14        Lastly, Mario Junior again summarily states that his father and he were subject to improper debt

15   collection efforts by Palisades Collections.  On October 20, 2009, Chase sold the account ending in 3589

16   (previously 5520) to Palisades Collection, LLC.  (Dkt. No. 86, Palisades Collection, LLC Responses

17   to Subpoena attached to Jaffe Decl., Ex. A.)  Plaintiff does not provide any specific facts as to the

18   timing, manner or method of Palisade's efforts.  Plaintiffs merely cite to the Palisades discovery

19   responses.  In reviewing the documents provided by Palisades, the documents pertain solely to account

20   5520.  In addition, the collection efforts are directed to Mario Senior as the social security number on

21   the document belongs to Mario Senior.  (Dkt. No. 86 at 12.)  Moreover, the account was sold to

22   Palisades Collection, and therefore, any unlawful debt collection acts must be alleged against Palisades

23   Collections, not Chase.  In sum, Mario Junior has failed to show there is a genuine issue of material fact

24   that any collection efforts were directed at him.

25        Accordingly, the Court concludes that there are no genuine issues of material fact as to whether

26   Defendant violated the RFDCPA and GRANTS Defendant's motion for summary judgment as to the

27   RFDCPA.

28
                                        14

**C.     Fair Credit Report Act, 15 U.S.C. § 1681 *et seq.*   and California Consumer Credit Reporting Agencies Act, Cal. Civil Code § 1785.25(a)**

In the first amended complaint, Mario Junior alleges that after Plaintiffs contacted the major credit reporting agencies and disputed Chase's credit reporting regarding both accounts, Defendant had a duty to properly investigate the disputed information under 15 U.S.C. § 1681s-2(b) and California Civil Code section 1785.25(a).  In addition, Mario Junior claims that Chase failed to request the removal of the inaccurate credit reporting.

The purpose of the FCRA is to protect consumers from the transmission of inaccurate information about them and "to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner."  Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995) (citations omitted).  15 U.S.C. § 1681s-2(b) concerns the duties of furnishers of information upon notice of a dispute.  15 U.S.C. § 1681s-2(b).  The CCRAA mirrors the provisions of the FCRA.  Guimond, 45 F.3d at 1335.

Defendant contends that Mario Junior's claims for violation of the FCRA and the California Consumer Credit Reporting Agencies Act do not state a disputed issue of material fact.  Chase argues that since both accounts were opened using Mario Senior's date of birth and social security numbers, the accounts were only reported to Mario Senior's credit reports and the reporting of both accounts have been deleted.  (Trimmer Decl. ¶ 19; Trimmer Depo. at 12:1-6.)  Chase states that it was not provided with Mario Junior's date of birth or social security number and neither account was ever reported to Mario Junior's credit report.  (Trimmer Decl. ¶ 20.)  In discovery, Mario Junior produced two credit reports dated September 17, 2008 which shows that neither account was reported to Mario Junior's credit.  (Krog Decl., Ex. D.)  In opposition, Plaintiff does not provide any facts to show that Chase furnished any information regarding the two accounts to Mario Junior's credit report.

Chase has shown that there is no genuine issue as to any material fact on Mario Junior's claim against Chase for violating the FCRA and CCRAA.  In opposition, Plaintiff Mario Junior has failed to provide specific facts to show there is a genuine issue for trial.  See Celotex, 477 U.S. at 324.  Since both accounts were not reported to Mario Junior's credit report, there are no genuine issues of material

15

fact as to whether Defendant violated the Fair Credit Reporting Act and the California Consumer Credit Reporting Agencies Act.  Accordingly, the Court GRANTS Defendant's motion for summary judgment as to the FCRA and the CCRAA.

**D.     Negligence and Injunctive Relief**

In the first amended complaint, Plaintiffs also allege claims for negligence and injunctive relief as it relates to the debt collection activities and improper credit reporting activities against Mario I. Defendant moves for summary judgment on these claims.  Since the Court has concluded that there are no genuine issues of material fact as to whether Chase engaged in improper debt collection under the California Fair Debt Collection Practices Act, and whether Chase engaged in improper credit reporting under the FCRA and the CCRAA, Plaintiff's claims for negligence and injunctive relief necessarily fails.  Accordingly, the Court GRANTS Defendant's motion for summary judgment as to the claims for negligence and injunctive relief.

**E.     Evidentiary Objections**

Plaintiffs filed an objection to the declaration of Karen Trimmer and argues that her declaration is not a proper business records declaration and does not provide proper foundation or authentication under Federal Rules of Evidence 803(6) and 902(11).  (Dkt. No. 84-2.)  They argue that she is not a custodian of the referenced documents, has no personal knowledge of the facts of this case other than what she has read in the documents, and had no involvement in the case prior to the commencement of the lawsuit.  Defendant opposes arguing Trimmer is qualified to testify.

Federal Rule of Evidence 803(6) provides,

> A . . .  report, record, or data compilation, in any form, of acts, events, condition, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the . . . report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed. R. Evid. 803(6).  In order for business records to be admissible, "the following foundational facts must be established through a custodian of the records or another qualified witness: (1) the records must

have been made or transmitted by a person with knowledge at or near the time of the incident recorded; and (2) the record must have been kept in the course of a regularly conducted business activity." <u>United States v. Ray</u>, 930 F.2d 1368, 1370 (9th Cir. 1990). "Other qualified witness" is broadly interpreted to require only that the witness understand the record-keeping system." <u>Id.</u> (holding that welfare fraud investigator who was familiar with the filing and reporting requirements for public assistance benefits was "other qualified witness" although she was not custodian of record); <u>United States v. Basey</u>, 613 F.2d 198, 201 n. 1 (9th Cir.1979) (college records properly admitted to establish defendant's address even though the custodian did not herself record the information and did not know who did). Federal Rule of Evidence 902(11) also states that a business record must be "accompanied by a written declaration of its custodian or other qualified person."

Here, Karen Trimmer is Vice President and Senior Business Process Manager at Chase. (Trimmer Decl. ¶ 1.) She states she is a liaison between the fraud department and the lending area investigating customer disputes regarding fraud. (<u>Id.</u>) She states she is "a custodian of the documents maintained with respect to the two credit card accounts issued by Chase to plaintiff Mario B. Quinones ("Mario Senior"), and I am familiar with those records." (<u>Id.</u>) She also states that Chase maintains records on credit card accounts in the ordinary course of its business and the records contain entries made at or near the time of the events recorded or information received in accordance with Chase's regular practices. (<u>Id.</u> ¶ 2.) Based on her declaration, all factors under Rule 803(6) and Rule 902(11) have been met. Accordingly, Plaintiffs' objections as to Karen Trimmer's declaration and accompanying exhibits are overruled.

Defendant also filed objections to evidence submitted by Plaintiff in his opposition to motion for summary judgment. (Dkt. No. 91.) The Court notes Defendant's objections. To the extent that the evidence is proper under the Federal Rules of Evidence, the Court considered the evidence. To the extent that the evidence is not proper, the Court did not consider them.

**F.      Chase's Amended Counterclaim against Mario I.**

On October 25, 2010, Defendant filed an amended counterclaim alleging breach of contract as to the accounts ending in 6183 and 5520 and a claim for money had and received as to the accounts

1   ending in 6183 and 5520.  (Dkt. No. 55.)  Defendant moves for summary judgment as to Chase's

2   amended counterclaim against Mario I. Quinones and asks that the court find him liable for the

3   outstanding debts owed on the two subject credit card accounts totaling $20,312.46 plus interest at the

4   contract rate of 27.24% as well as attorney's fees and costs.

5        **1.    Breach of Contract**[5]

6        Breach of contract requires "pleading of a contract, plaintiff's performance or excuse for failure

7   to perform, defendant's breach[,] and damage to plaintiff resulting therefrom."  <u>Munoz v. MacMillan</u>,

8   195 Cal. App. 4th 648, 655 (2011) (citation omitted).  No contract may exist until "there has been a

9   meeting of the minds on *all* material points.  <u>Banner Enter., Inc. v. Superior Court</u>, 62 Cal. App. 4th

10  348, 357-58 (1998) (emphasis in original).

11       When the two accounts were opened, the card and the cardmember agreement were sent to

12  "Mario Quinones." (Trimmer Decl. ¶¶ 5, 8.)  The cardmember agreement states that the cardholder will

13  be bound by the agreement if the cardholder uses the account for any purpose.  (Trimmer Decl., Ex. A,

14  p. CH0208.)  The cardmember agreement provides that if the account is in default, Chase may close the

15  account without notice and require the cardholder to pay the unpaid balance immediately and may also

16  require the cardholder to pay interest at a rate of 2% a month on the unpaid balance when Chase deems

17  the account to be six or more billing cycles past due.  (<u>Id.</u> at CH0210.)  In addition, the default APR is

18  "[t]he Prime Rate plus up to 23.99%."  (<u>Id.</u> at CH0213.)   The agreement also provides that the

19  cardmember will pay Chase's "collection costs, attorneys' fees, court costs, and all other expenses of

20  enforcing [Chase's] rights under this agreement."  (<u>Id.</u> at CH0210.)

21       As to the 6183 account, Defendant argues that since Mario Junior used the credit cards, he

22  became bound by the cardmembers agreement.  In addition, Mario Junior admits opening a Chase credit

23  card in September 2007 and used the account to make purchases.  The July 29, 2008 letter of Plaintiff's

24  counsel states that Mario I. takes sole responsibility for the account ending in 6183.  Therefore,

25

26       [5]In its moving papers, Defendant makes an alternative argument that Mario Junior is liable for
    breach of an implied contract with Chase. (Dkt. No. 63-1 at 20.) However, the Court notes that breach
27  of an implied contract is not a cause of action in the first amended counterclaim.  As such, the claim will
    not be considered.

28
                                            18

1   Defendant contends that Mario Junior breached the cardmember agreement and judgment should be

2   entered in its favor pursuant to the terms of the cardmember agreement.

3          As to the 5520 account, although Mario Junior denied having opened that account, the evidence

4   shows he used the account and made payments on the account.  Storage, Chase's fraud investigator,

5   contacted St. Rita's school and learned that Mario Junior made payments to the school for his children

6   with the cards. (Trimmer Decl., Ex. A. at CH0032.)  Mario Junior even testified that he made payments

7   to his children's school using the credit card.  (Krog. Decl., Ex. A at 59:16-18.)  In addition, Storage

8   confirmed that "Mario Quinones" had an account with Orange County Credit Union, which is where

9   the payments to the credit card accounts were made.  (Trimmer Decl., Ex. A., p. CH0032; Storage Decl.

10  ¶ 7.)  In addition, Rent-A-Wheel and from Volvo of Orange County provided copies of sales receipts

11  for account number ending in 5520 and as to the Rent-A-Wheel receipt, it shows Mario Junior's

12  signature as well as a photocopy of Mario Junior's driver's license and a photocopy of the 5520 credit

13  card.  (Cuevas Aff.; Conkling Aff. filed under seal.)  Mario Junior testified that the Volvo receipts

14  contain his signature.  (Krog Decl., Ex. A, Mario Junior Depo. at 171:11-17; 172:2-7; 173:1-19.)

15         Mario Junior does not provide any facts to oppose Defendant's motion for summary judgment

16  as to the counterclaims.  However, based on the documents submitted, the first amended complaint

17  states that Mario Junior did not open the 5520 account and does not have any responsibility for that

18  account. (FAC ¶ 10.)  At his deposition, Mario Junior stated that he did not recall applying for another

19  card besides the one credit card in July 2007.  (Krog Decl., Ex. A, Mario I. Depo. at 205:25-206:10.)

20  He argues that he opened only one Chase credit card account and he paid for his charges and has no

21  further responsibility, and/or is responsible for the limited amount owed for the one account which is

22  less than $4,000.  (Ps' Opp., Dkt. No. 84 at 6.)

23         Defendant has failed to show there was a contract between Mario Junior and Chase.  The

24  primary argument in Defendant's motion for summary judgment was that no collection efforts were

25  made against Mario Junior because Chase held Mario Senior responsible for both accounts.  All personal

26  information on the account belonged to Mario Senior.  Chase repeatedly contacted Mario Senior

27  regarding the defaulted credit cards and appears to have reported his default to the credit reporting

28

1   companies.  Therefore, at the time that the credit card was sent out by Chase, it believed it was providing

2   a credit card to Mario Senior, not Mario Junior.  Therefore, there was no "meeting of the minds"

3   between Mario Junior and Chase.  Accordingly, the Court DENIES Defendant's motion for summary

4   judgment as to the counterclaim of breach of contract against Mario Junior.

5   **2.   Money Had and Received**

6   Defendant also brings a counterclaim against Mario I. for money had and received on the two

7   credit card accounts.  However, on October 20, 2009, Chase sold the account ending in 5520 (later

8   changed to 3589) to Palisades Collection, LLC.  (Dkt. No. 86, Ex. A.)  The documents show and

9   Defendant admits that Palisades Collection, LLC purchased the rights, title and interest in the 5520

10  account.  (Reply at 8; Dkt. No. 86, Ex. A.)  Therefore, Chase may not be entitled to relief on the 5520

11  account.  Mario Junior has not provided any facts to oppose this claim.

12  A claim for money had and received is stated if it is alleged the defendant "'is indebted to the

13  plaintiff in a certain sum 'for money had and received by the defendant for the use of the plaintiff.'"

14  Farmers Ins. Exchange v. Zerin, 53 Cal. App.4th 445, 460 (1997) (quoting Schultz v. Harney, 27 Cal.

15  App.4th 1611, 1623 (1994)).

16  As discussed above, Mario I. admitted opening the 6183 account and made purchases on it.  The

17  billing statements provide the specific charges he made on the 6183 account.  (Trimmer Decl., Ex. A,

18  p. CH0055 - CH0093.)  The last payment on the 6183 account was made through December 31, 2007

19  and as of January 9, 2008, the account had a balance of $3,646.76.  (Trimmer Decl., Ex. A, p. CH0063.)

20  One final payment was made on July 3, 2008.  (Id. at CH0075.)

21  Chase has provided sufficient facts to show that Mario Junior made charges on the 6183 account

22  and is indebted to Chase for money had and received.  Since the Court denied Chase's motion for

23  summary judgment as to the counterclaim against Mario Junior for breach of contract, the provisions

24  regarding interest rate in the cardmember agreement does not apply.  Accordingly, the Court GRANTS

25  Defendant's motion for summary judgment as to the counterclaim against Mario Junior for money had

26  and received as to the credit card account ending in 6183 and Chase shall be entitled to the legal rate

27

28

1   of interest of 7% as of the date of default.[6]

2   **G.      Motion to Enforce Judgment**

3           Defendant seeks an order enforcing the Rule 68 offer of judgment filed on November 8, 2010.

4   (Dkt. No. 61.)  Defendant argues that all the claims alleged by Mario Senior in the first amended

5   complaint are disposed of by this offer of judgment.  Plaintiff opposes contending that only the claim

6   for the California Fair Debt Collection Practices Act was disposed of and all remaining causes of action

7   remain.

8           General rules of contract interpretation apply where disputes arise regarding the terms of a Rule

9   68 offer.  Nusom v. Comh Woodburn, Inc., 122 F.3d 830, 833 (9th Cir. 1997); see also Herrington v.

10  County of Sonoma, 12 F.3d 901, 907 (9th Cir. 1993).  Where a contract is ambiguous, the usual rule of

11  contract interpretation is to construe the ambiguity against the drafter, particularly in the context of a

12  Rule 68 offer which can put the plaintiff to a difficult choice.  Nusom v. Comh Woodburn, Inc., 122

13  F.3d 830, 833-34 (9th Cir. 1997).  Only when a genuine ambiguity exists will a term be construed

14  against the offeror as the drafting party.  Herrington, 12 F.3d at 907.  If ambiguities are found, other

15  evidence may be presented to clarify the terms.  Id.

16          The Rule 68 offer of judgment that was signed by both parties included the following
        language: Judgment in favor of Mario Senior and against Chase in the total amount
17      of One Thousand and One Dollars ($1,001.00), which shall constitute full payment
        for alleged damages suffered by Mario Senior, in the first amended complaint in this
18      action, plus reasonable attorney fees and costs incurred solely as to Mario Senior's
        claim for violation of the California Fair Debt Collection Practices Act (Cal. Civ.
19      Code § 1788, et seq.) through and including the day of the making of this offer as
        determined by the Court, on noticed motion.
20
21  (Dkt. No. 61) (emphasis included in original).   Plaintiff accepted the offer on November 8, 2010 and

22  it was filed on that same day.  (Dkt. No. 61.)  On November 10, 2010, the Clerk of Court issued a

23  judgment in the case stating that "[p]ursuant to Rule 68 of the Federal Rules of Civil Procedure,

24  judgment is entered in favor of plaintiff Mario B. Quinones against defendant Chase Bank USA, N.A.

25  in the amount of $1,001.00, plus reasonable attorney fees and costs."  (Dkt. No. 62.)

26  ────────────────

27          [6]According to the California Constitution, the legal rate of interest on an obligation before the
    entry of judgment is 7 percent unless otherwise specified by statute.  Continental Airlines v. McDonnell
    Douglas Corp., 216 Cal. App. 3d 388, 434 (1989) (citing Cal. Const., art. 15, § 1.).

28

1   The Court concludes that the language in Rule 68 offer of judgment is not ambiguous.  First, the

2   sentence is divided into two sections which is separated by a comma.  The first part of the sentence

3   concerns damages and the second section concerns attorney's fees.  Second, the language in the Rule

4   68 offer of judgment states that judgment "shall constitute full payment for alleged damages suffered

5   by Mario Senior, in the first amended complaint in this action, . . . ."  If the offer was subject to

6   dismissal as to only one claim, the use of "first amended complaint" loses its meaning.

7   Moreover, the two phrases are connected by the word "plus."  "Plus" means "in addition to."

8   Bluestein v. Board of Admin., 92 Cal. App. 3d 904, 906 (1979) (regarding civil service employee's

9   service credits for retirement benefit purposes).  "Plus" also means "an added quantity."  Siddiqui v.

10   United States, 359 F.3d 1200, 1203 (9th Cir. 2004); Shapiro v. Associated Intern. Ins. Co., 899 F.2d

11   1116, 1122 (11th Cir. 1990) (the most natural reading of the use of the comma and the word "plus" is

12   to read the two phrases separately).

13   Here, Chase used a comma and the word "plus" separating the two sections of the sentence.  The

14   first part concerned the dismissal of all claims in the first amended complaint as to Mario Senior while

15   the second part concerned attorney's fees as it relates to the CFDCPA.  The Court also notes on

16   November 10, 2010, the Clerk's Office filed a judgment in the case in favor of Plaintiff Mario B. and

17   against Defendant Chase.  (Dkt. No. 62.)  The Clerk of Court read the unambiguous language in the

18   Rule 68 offer and concluded that it disposed of all claims by Mario Senior.

19   Therefore, the Court GRANTS Defendant's motion for an order enforcing the Rule 68 offer of

20   judgment as to Mario Senior and bars him from pursuing any of his claims.

21   **Conclusion**

22   Based on the above, the Court

23   1)   GRANTS Defendant's amended motion for summary judgment as to the remaining

24   claims brought by Mario I. in the first amended complaint.[7]

25

26   [7]The Court notes that although Defendant moved for summary judgment on all claims in the first
amended complaint, including declaratory relief, no argument or facts were provided in its briefing

27   regarding declaratory relief.  Based on the Court's ruling on Chase's motion for summary judgment on
its counterclaim, Plaintiff's fourth cause of action for declaratory relief must be dismissed.

28

2)     DENIES Defendant's motion for summary judgment as to the counterclaim of breach of contract against Mario I.;

3)     GRANTS Defendant's motion for summary judgment as to the counterclaim against Mario I. for money had and received solely as to the account ending in 6183. Judgment shall be entered in favor of Defendant against Mario I. in the amount of the principal owed on account 6183 and Chase shall be entitled to the legal rate of interest of 7% as of the date of default; and

4)     GRANTS Defendant's motion for an order enforcing the Rule 68 Offer of Judgment as to Mario Senior and bars him from pursuing any of his claims.

IT IS SO ORDERED.

DATED:  September 26, 2011

_____
Hon. Anthony J. Battaglia
U.S. District Judge

23