UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO B. QUINONES and MARIO I. QUINONES,<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>CHASE BANK USA, N.A.,<br><br>　　　　　　　　　　　　Defendant. | Civil No.   09cv2748-AJB(BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF MARIO B.'S MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>**[Doc. No. 67.]** |

　　　On November 23, 2010, Plaintiff Mario B. Quinones ("Mario Senior") filed a motion for attorney's fees and costs pursuant to the provision of a Rule 68 offer of judgment filed on November 8, 2010. (Dkt. No. 67.)  Defendant Chase Bank USA, N.A. ("Chase") filed an opposition on January 10, 2011. (Dkt. No. 80.)  Mario Senior filed a reply on January 14, 2011. (Dkt. No. 83.)  After a review of the motion, on September 13, 2011, the Court issued an order directing Plaintiff's counsel to resubmit his billing records and to provide more specific information regarding the number of hours spent and to state what portion of the total amount spent was devoted specifically to Mario Senior and his claim for the California Fair Debt Collection Practices Act, California Civil Code § 1788 *et seq.*  On October 3, 2011, Plaintiff's counsel filed a supplemental declaration. (Dkt. No. 108.)  On October 13, 2011, Defendant filed an opposition to Plaintiff's supplemental brief. (Dkt. No. 115.)  On October 21, 2011, Plaintiff's counsel filed a reply. (Dkt. No. 120.)  Based on a review of the papers and the applicable law, the Court GRANTS in part and DENIES in part Plaintiff Mario Senior's motion for attorney's fees and costs.

**Background**

On December 9, 2009, the case was removed to this Court from state court. (Dkt. No. 1.) In the first amended complaint, Plaintiffs Mario B. ("Mario Senior") and Mario I. ("Mario Junior") each alleged seven causes of action against Defendant for violation of the Fair Debt Collection Practices Act ("FDCPA"), violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), negligence, declaratory relief, injunctive relief, violation of the Fair Credit Reporting Act ("FCRA"), and violation of the California Consumer Credit Reporting Agencies Act ("CCRAA"). (Dkt. No. 14.) On June 28, 2010, the Court granted Defendant's motion to dismiss the first cause of action under the FDCPA. (Dkt. No. 27.)

On October 25, 2010, Defendant Chase filed a first amended counterclaim against Mario I. alleging breach of contract, and money had and received as to the two credit card accounts. (Dkt. No. 55.) On November 8, 2010, Mario I. filed an answer to the first amended counterclaim. (Dkt. No. 60.) On the same day, Mario Senior accepted a Rule 68 offer of judgment which was filed with the Court. (Dkt. No. 61.) On November 10, 2010, the Clerk of Court entered judgment "in favor of plaintiff Mario B. Quinones against defendant Chase Bank USA, N.A. in the amount of $1,001.00, plus reasonable attorney fees and costs." (Dkt. No. 62.)

As to attorney's fees, the Rule 68 offer of judgment states, " . . . plus reasonable attorney fees and costs incurred <u>solely as to Mario Senior's claim for violation of the California Fair Debt Collection Practices Act (Cal. Civ. Code § 1788, et seq.)</u> through and including the day of the making of this offer as determined by the Court, on noticed motion." (Dkt. No. 61) (emphasis in original). Therefore, Plaintiff's attorney's fees and costs are limited Mario Senior's one cause of action under the RFDCPA.

**A.   Motion for Attorney's Fees**

Plaintiff Mario B. moves for attorney's fees and costs pursuant to Defendant's Rule 68 offer of judgment filed on November 8, 2010. (Dkt. No. 61.) In the original motion, Plaintiff sought attorney's fees for 218.90 hours in the amount of $64,575.50 and costs in the amount of $5,511.19 for a total of $70,086.69. He also sought an enhancement/multiplier in the amount of $35,043.35. In his supplemental briefing, Plaintiff's fee request was reduced to 213.5 hours for a total of

$62,982.50 and costs in the amount of $5,511.109. He continues to seek a fee enhancement. In opposition, Chase argues that Plaintiff's attorney's fees are excessive and should be between $1,250 to $4,500.

An award of attorney's fees based on state substantive law is generally governed by state law. Champion Produce, Inc., Ruby Robinson, Inc., 342 F.3d 1016, 1024-25 (9th Cir. 2003). In RFDCPA cases, the 'lodestar' method is used. See Komarova v. National Credit Acceptance, Inc., 175 Cal. App.4th 324, 346-47 (2009). The lodestar is calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Ketchum v. Moses, 24 Cal. 4th 1122, 1131-32 (2001). The trial court has broad discretion in making a determination on attorney's fees. Ketchum, 24 Cal. 4th at 1132. The California Supreme Court explained that the "trial judge is the best judge of the value of professional services rendered in his court and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." Id. (quoting Serrano v. Priest, 20 Cal. 3d 25, 49 (1977)). "[T]rial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." Id. "In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence. General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guar. Ass'n., 163 Cal. App. 4th 550, 564 (2008). Under California law, a trial court is not required to issue a statement of decision in connection with a motion for a fee award. Ketchum, 24 Cal. 4th at 1140; Maria P. v. Riles, 43 Cal. 3d 1281, 1294-1295 (1987).

Defendant argues that Plaintiff's counsel is entitled to fees that range from $1,250 to $4,500. However, Plaintiff contends that Defendant extended the litigation for Mario B. for over twelve months and therefore, the range of $1,250 - $4,500 is not reasonable. The Court agrees.

The conduct at issue began in July 2008, a complaint was filed in state court on September 3, 2009, and the Rule 68 offer of judgment was made on October 27, 2010. The Rule 68 offer of judgment was made over a year after the complaint was originally filed in state court and past the

1  end of the discovery deadline of October 4, 2010.  Plaintiff's counsel had to prosecute the complaint
2  through motion hearings, discovery disputes and settlement conferences.  (See Docket.)
3  Defendant's argument that Plaintiff's counsel's fees should be limited to $1,250 to $4,500 is not
4  reasonable.

5  **1.     Reasonable Hourly Rate**

6  Plaintiff argues that a rate of $295 per hour is a reasonable hourly rate in the San Diego
7  community.  He cites to cases from the District Court for the Southern District of California.  See
8  Meyers v. LHR, Inc., 543 F. Supp. 2d 1215, 1219 (S.D. Cal. 2008) (holding that a rate of $295 per
9  hour for a partner was consistent with the rates charged in the community in an FDCPA and
10 RFDCPA case).  Tomovich v. Wolfpoff & Abramson, 2009 WL 3486693 at 4 (S.D. Cal. 2009)
11 (concluding that $300/hour to be a reasonable rate for plaintiff's attorney in an FDCPA and
12 RFDCPA case).

13 Defendant argues that Plaintiff has failed to bear the burden of producing evidence that the
14 requested rate is reasonable because Plaintiff has not produced any evidence of any hourly paying
15 clients.  Defendant contends that its counsel George Weickhardt, who has been practicing in the area
16 of banking litigation for 37 years is billed at $265.65.  Defendant contends that these are the
17 maximum rates that financial institutions will pay for simple FCRA and FDCPA cases.  Defendant
18 believes the rate should be reduced 24% to $224/hour, the average of billable rates between the two
19 attorneys working on the case for Defendant.

20 The reasonable hour rate is that "prevailing in the community for similar work."  PLCM
21 Group, Inc. v. Dexler, 22 Cal. 4th 1084, 1095 (2000) (citing Margolin v. Reg'l Planning Comm.,
22 134 Cal. App. 3d 999, 1004 (1982)).  The market rate is based on the "rates prevalent in the
23 community where the services are rendered, i.e., where the court is located."  MBNA Am. Bank,
24 N.A. v. Gorman, 147 Cal. App. 4th Supp. 1, 13  (2006).  The moving party satisfies its burden
25 through its own affidavits and no additional evidence is needed.  Id.

26 Here, Plaintiff's counsel states that he has been an attorney with over sixteen years of
27 litigation experience with a specialty in consumer litigation.  (Jaffe Decl. ¶ 5, Dkt. No. 67-2.)  He
28 graduated law school in 1993.  (Id.)  He has been practicing as a civil trial lawyer since 1993 and in

2000, he opened his own law practice focusing on consumer litigation. (Id. ¶ 7.)

District courts in San Diego in FDCPA and RFDCPA cases have determined that $295 and $300/hour for plaintiff's counsel was reasonable. See Meyers v. LHR, Inc., 543 F. Supp. 2d 1215, 1219 (S.D. Cal. 2008); Tomovich v. Wolfpoff & Abramson, 2009 WL 3486693 at 4 (S.D. Cal. 2009). Besides defense counsel's rates, there are no contrary affidavits suggesting this rate is not in keeping with the prevailing rates in the community for a plaintiff's counsel. Accordingly, the Court concludes a plaintiff's attorney rate of $295.00 is reasonable in this RFDCPA case.

**2.    Hours Reasonably Expended**

Plaintiff seeks 213.5 hours of work related to Mario B.'s RFDCPA claim. Defendant argues that Plaintiff's request for attorney's fees is unreasonable and excessive.

The Rule 68 offer of judgment limited attorney's fees solely to prosecuting Mario B's RFDCPA claim. In opposition, Defendant objects to numerous entries in the billing statement as excessive including work that go beyond the scope of prosecuting Mario B's RFDCPA claim. On October 3, 2011, Plaintiff provided a supplemental declaration providing more details as to each entry. (Dkt. No. 108-1.) Although Defendant opposes most or all of the time entries in its initial opposition[1], it did not update the objections as to each time entry in response to Plaintiff's supplemental declaration. The Court will only address the specific arguments and objections that were addressed in its original opposition, (Dkt. No. 80), and supplemental declaration, (Dkt. No. 115). See Premier Med., 163 Cal. App. 4th at 564 (a party challenging attorney fees as excessive must point to specific items with arguments and citation to the evidence).

a.   July 30, 2008 entry of .5 hours totaling $147.40 for "[w]ork on letter to credit reporting agencies regarding Mario B. Quinones." Defendant opposes this entry because it relates solely to the credit reporting claim and not the RFDCPA. Plaintiff argues that since the letter

---

[1] In its opposition, Defendant presents two different methods to allocate the attorney's fees based on the claims in the first amended complaint. First, Chase suggests that the Court award fees only to entries that specifically address the RFDCPA claim which amount to $2,500. Of this amount, ½ is allocated to Mario B. since there were two plaintiffs. Therefore, $1,250 should be awarded as attorney's fees. Second, Chase contends that since there are a total of 15 claims in the first amended complaint and counterclaims, the total should be divided by 1/15 to account for the one RFDCPA claim. Therefore, the total award should be $4,672.40. (Weickhardt Decl. at 4.) Both of these methods are not supported by legal authority and undervalues Plaintiff's work in this case.

references the RFDCPA, it should be included and explains that the letter disputed the debt and requested verification pursuant to RFDCPA. It is well settled that "[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." Reynolds Metals Co. v. Alperson, 25 Cal. 3d 124, 129-130 (1979); see also Graciano v. Robinson Ford Sales, Inc., 144 Cal. App. 4th 140, 159 (2006) ("'Attorney's fees need not be apportioned between distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories'").

In California, truthful credit reporting does not violate the RFDCPA; however, improper credit reporting under the FCRA may create a claim of unlawful debt collection under the RFDCPA. See 15 U.S.C. § 1692e(2)(A); (e)(8) (the RFDCPA incorporates by reference provisions under the Federal Debt Collection Practices Act). The FDCPA prohibits the use of any false, deceptive or misleading means to collect a debt which includes communicating to any person credit information which is known or which should be known to be false. 15 U.S.C. § 1692e(8). Therefore, disputing and verifying the debt were investigative acts by Plaintiff's counsel to determine whether such acts created a cause of action under the RFDCPA. See id. The letter sent to the credit reporting agencies disputing and requesting of the debt as to Mario Senior is relevant and related to his RFDCPA claim. Therefore, this entry is proper.

b. February 5, 2010 entry of 3.8 hours totaling $1,121.00 for "[m]eeting with Mario B. Quinones and attend ENE conference." Chase argues that the entry is improper because the ENE conference dealt with the entire case and Plaintiff did not allocate the time spend on the RFDCPA. "Allocation of fees incurred in representing multiple parties is not required when the liability of the parties is 'so factually interrelated that it would have been impossible to separate the activities . . . into compensable and noncompensable time units.'" Cruz v. Ayromloo, 155 Cal. App. 4th 1270, 1277 (2007). Here, the crux of Mario B's claims was the allegedly improper debt collection activities by Chase. At the time of the ENE, prior to discovery, facts supporting both Mario B. and Mario I.'s claims were interrelated and except

the two claims under the credit reporting acts, all remaining claims alleged were related to the RFDCPA. It could also be argued that facts underlying the claims for the credit reporting acts could have also been relevant to the RFDCPA claim. See 15 U.S.C. § 1692e(8). Accordingly, the Court concludes that this entry is proper.

c. March 28, 2010; March 29, 2010; April 5, 2010; April 6, 2010; and April 7, 2010 entries of 7.9 hours totaling $2,330.00 regarding Chase's motion to dismiss the FDCPA claim. Defendant objects to these entries because they concern Chase's motion to dismiss Mario B's federal FDCPA claim, not the state RFDCPA claim. In opposition, Plaintiff contends that since the RFDCPA incorporates some of the FDCPA, he included time spent with regard to the RFDCPA because the motion included facts supporting Mario Senior's RFDCPA claim. The Court disagrees with Plaintiff's reasoning. The motion to dismiss the federal FDCPA claim concerned solely the FDCPA and not the RFDCPA. The legal argument to dismiss the FDCPA claim was not applicable to the RFDCPA. Use of the same facts does not entitle Plaintiff to claim fees on the state claim where that claim was not at issue. Accordingly, the Court excludes the fees from March 28, 2010 to April 9, 2010 for 7.9 hours totaling $2,330.50.

d. May 6, 2010 entry of .8 hours totaling $236.00 regarding "[a]ttend telephone conference; [r]eview order and calendar." Plaintiff states that there was no additional time spent on the other claims and the conference concerned Chase's position that it would never pay anything to Mario Senior on his RFDCPA claim. Therefore, the time entry would have been the same even if the RFDCPA was the only claim. Plaintiff clarified that the conference call was about Mario Senior's RFDCPA claim, Therefore, this entry is proper.

e. May 19, 2010 entry of 2.8 hours totaling $826.00 regarding "[w]ork on supplemental Rule 26 disclosures." Defendant opposes because the amendment only added damages as to the inaccurate credit reporting claim. Plaintiff argues that the disclosures were made concerning the RFDCPA claim because Chase's use of the credit reporting system was an improper debt collection activity. The Court disagrees. Damages as to the inaccurate credit reporting claim is distinct from facts supporting an RFDCPA claim. Therefore, the Court excludes the 2.8

|   |   |   |
|---|---|---|
| 1 |   | hours totaling $826.00. |
| 2 | f. | June 7, 2010 entry of 2.1 hours totaling $619.50 regarding [a] attend discovery conference. |
| 3 |   | This objection is duplicative and incorporated in subsection (l) discussed below. |
| 4 | g. | June 15, 2010 entry of 6.7 hours totaling $1,976.50 regarding "[m]eeting with Mario B. |
| 5 |   | Quinones and Cataline Niva Quinones; Attend depositions"; June 15, 2010 entry of 4.5 hours |
| 6 |   | totaling $1,327.50 regarding "[p]repare for depositions." The total amount sought is $3,304. |
| 7 |   | Defendant opposes arguing that the deposition was only for 4 hours but he claimed 6.7 hours |
| 8 |   | plus 4.5 hours for preparation. Plaintiff explains that the original billing record states that |
| 9 |   | the extra time in 6.7 hours was a meeting with Mario B. and his wife regarding their |
| 10 |   | deposition. The Court finds this entry appropriate and related to Mario B.'s RFDCPA claim. |
| 11 | h. | August 6, 2010 entry of 1.3 hours totaling $383.50 regarding "[r]eview expert report"; |
| 12 |   | August 9, 2010 entry of .4 hour totaling $118.00 for "[w]ork on ltr to Krog" and .9 hour |
| 13 |   | totaling $265.00 regarding "[w]ork on expert deposition notice." Defendant states that its |
| 14 |   | expert report focused entirely on Chase's fraud investigation and credit reporting. Plaintiff |
| 15 |   | argues that in conducting its fraud investigation, Chase engaged in improper debt collection |
| 16 |   | activities. The manner in which Chase conducted its fraud investigation is the basis for |
| 17 |   | Plaintiff's RFDCPA claim. Therefore, a review of the report and objecting to it relate to |
| 18 |   | Mario B's RFDCPA claim. These entries are proper. |
| 19 | i. | September 6, 2010 of 1.5 hours totaling $442.50 on "[w]ork on interrogatory responses"; and |
| 20 |   | September 10, 2010 of 1.3 hours totaling $383.50 regarding "[r]eview Krog ltr and |
| 21 |   | attachment" concerning the interrogatory responses. The total time for the two entries is 2.8 |
| 22 |   | hours totaling $826.00. Defendant opposes contending that these entries concern solely the |
| 23 |   | damage claimed as a result of the alleged credit reporting of the subject accounts. It claims |
| 24 |   | that the interrogatories did not concern any debt collection claims. Plaintiff argues that "use |
| 25 |   | of credit reporting indicating Mario Senior was responsible for the subject accounts, and had |
| 26 |   | failed to timely pay, was improper debt collection in violation of the FDCPA in an effort to |
| 27 |   | get Mario Senior to pay a debt for which he had no obligation." (Jaffe Reply Decl. filed |
| 28 |   | 10/21/11 ¶ i.) |

1      The interrogatory responses concern damages claimed by Mario Senior as to the credit
2      reporting claims, not the RFDCPA. Although improper credit report can fall under the
3      RFDCPA, which is what Plaintiff is alleging, damages solely under the credit reporting act is
4      not related to the RFDCPA. Accordingly, the Court excludes the 2.8 hours totaling $826.00.
5  j.   July 7, 2010 for 2.1 hours totaling $619.50 for "[p]repare for deposition"; July 8, 2010 for
6      3.4 hours totaling $1,003.00 for "[a]ttend deposition"; September 20, 2010 of 1.3 hours
7      totaling $383.50; and September 21, 2010 for 5.5 hours totaling $1,622.50[2] for "[a]ttend
8      deposition." Defendant objects to Plaintiff's counsel claiming the entire amount of time
9      recorded for the deposition which included preparing and attending Mario I's deposition
10     because the deposition was devoted primarily to Mario Junior's claims and Chase's
11     counterclaims against him. Plaintiff explains that the deposition focused on Chase's "fraud
12     investigation" and it was trying to find some basis to support its belief that Mario Senior was
13     responsible for the accounts and to get him to pay for the debt.
14     The Court concludes that the time spent on Mario I's deposition is not proper as Mario I had
15     his own claims and counterclaims against him. The Court has reviewed the partial
16     deposition transcript submitted to the Court for Defendant's motion for summary judgment
17     which gives insight into the content of Mario I's deposition. The portion of the deposition
18     submitted focused on Mario's I's responsibility for both credit cards. The deposition
19     covered how Mario I opened the 6183 account, what he spent on it, how he made payments
20     on it, and whether he used the 5520 credit card. It focused on Mario's I's responsibility for
21     the credit card accounts as opposed to collection efforts against Mario B. Plaintiff has not
22     provided any documents that he is entitled to the fees related to Mario I's deposition and he
23     has not shown whether any part of the deposition was spent discussing Chase's debt
24     collection efforts against Mario B. Therefore, any claim for fees on Mario I's deposition is
25     not proper. The 12.3 hours spent totaling $3628.50 on preparing for and attending the
26     deposition of Mario Junior shall be excluded.

---

28     [2]The Court notes that the calculation for the entry on September 21, 2010 is incorrect. The total amount for 5.5 hours at the deposition should be $1,622.50, not $1,652.50.

1  k.  September 23, 2010; September 24, 2010; October 10, 2010; October 11, 2010 and October 13, 2010 of 14.8 hours totaling $4,366.00.  Chase contends that the deposition of its 30(b)(6) witness focused almost entirely on Chase's fraud investigation which pertains to whether a reasonable investigation was conducted pursuant to the FCRA.  Plaintiff opposes arguing that Chase engaged in improper debt collection activities through its fraud investigation.  He claims that Chase's use of credit reporting was an effort to get Mario B. Pay for the alleged debt.  As discussed above, any investigative work to determine whether Chase had properly conducted its investigation under the FCRA is related and relevant to the Mario B.'s RFDCPA claim against Chase.  Accordingly, these entries are proper.

l.  Chase raises issue as to the three discovery motions constituting 31.4 hours totaling $9,263.00.  They include the following entries:

1.  June 6, 2010 of 1.9 hours totaling $560.50 for "[r]eview Chase memo re: Chase PMK location and cases cited;

2.  June 7, 2010 of 2.10 hours totaling $619.50 for "[a]ttend discovery conference; Review order re: discovery conference";

3.  October 4, 2010 for 4.7 hours totaling $1,386.50 for "[w]ork on joint motion to continue discovery cutoff";

4.  October 4, 2010 for 2.1 hours totaling $619.50 for "[w]ork on Krog emails and review Krog emails";

5.  October 5, 2010 for .7 hours totaling $206.50 for "[r]eview declarations and amended declarations from Chase's counsel";

6.  October 5, 2010 for 1.6 hours totaling $472.00 for "[w]ork on objections to declarations by Chase's counsel and filing of proposed order";

7.  October 5, 2011 for .1 hours totaling $29.50 for "[r]eview Court order";

8.  October 5, 2010 for .9 hours totaling $265.50 for "[r]eview Krog emails and work on Krog emails";

9.  October 6, 2010 for 4.7 hours totaling $1,386.50 for "[r]esearch and work on privilege dispute";

10. October 7, 2010 for 5.6 hours totaling $1,652.00 for "[r]esearch for privilege dispute";

11. October 7, 2010 for .4 hours totaling $118.00 for "[r]eview Krog emails and work on emails to Krog";

12. October 8, 2010 for 4.9 hours totaling $1,445.50 for "[w]ork on joint discovery dispute";

13. October 13, 2010 for .4 hours totaling $118.00 for "[r]eview order re: privilege dispute";

14. October 25, 2010 for .4 hours totaling $118.00 for "[e]mail to Krog and review Krog email";

15. October 26, 2010 for .9 hours totaling $265.50 for "[t]elephone discovery conference."

The first motion concerned the venue and scheduling of Chase's 30(b)(6) witness; the second concerned Chase's attempt to recover a privileged letter concerning the 30(b)(6) witness that had been inadvertently produced; the third concerned Plaintiff's request for a further 30(b)(6) witness regarding its fraud investigation. Chase argues that these motions did not concern debt collection communications with Mario Senior. Plaintiff argues that the deposition issues concerning the Rule 30(b)(6) witness were needed for Mario Senior's RFDCPA claim. As discussed above, Plaintiff's investigation of the facts under the FCRA claim is relevant to the RFDCPA claim. These entries are proper.

Based on the above, the Court excludes 25.8 hours totaling $7,611.00 from Plaintiff's request.

**3.     Post-Rule 68 Fees**

As a general rule, in statutory fee cases, courts have held that time spent in establishing an entitlement to an amount of fees is compensable. In re Nucorp Energy, Inc., 764 F.2d 655, 659-60 (9th Cir. 1985). However, a "settlement offer may be conditioned upon the waiver of such fees." Guerrero v. Cummings, 70 F.3d 1111, 1113 (9th Cir. 1995) (citing Evans v. Jeff D., 475 U.S. 717, 737-38 (1986)). "Accepting such an offer constitutes waiver, but only if the waiver is "clear and

1  unambiguous." Erdman v. Cochise County, Ariz., 926 F.2d 877, 880 (9th Cir. 1991).

2   In Guerrero, the Court held that a Rule 68 offer of judgment stating "plus reasonable attorney
3  fees and costs incurred by this plaintiff prior to the date of this offer in an amount to be set by the
4  court" was not ambiguous and limited fees incurred before the offer. Id. at 1113. In another case,
5  the offer stated, "Plaintiff's cost and reasonable attorney fees now accrued." Pearson v. Nat'l Credit
6  Sys., Inc., 2010 WL 5146805 (D. Az. 2010.) The court held that the offer of judgment was clear and
7  unambiguous and Plaintiff was entitled to only the fees accrued prior to the acceptance of the offer
8  of judgment. Id. at 3.

9   Similarly, in this case, the Rule 68 offer of judgment provides that Plaintiff would be entitled
10 to "reasonable attorney fees and costs incurred solely as to Mario Senior's claim for violation of the
11 California Fair Debt Collection Practices Act (Cal. Civ. Code § 1788, et seq.) through and including
12 the day of the making of this offer as determined by the Court, on noticed motion." (Dkt. No. 61)
13 (emphasis in original). Plaintiff argues that the "through and including the day" modifies the
14 RFDCPA which immediately precedes it and does not reference attorney's fees and costs. However,
15 it is not clear how "through and including the day" references the RFDCPA and what that would
16 mean. The "through and including the day" clearly references the attorney fees and costs. The Rule
17 68 offer limits the recovery of attorney fees and costs through the date of the offer, October 27,
18 2010. Therefore, the Court excludes $8,230.50 in fees that were incurred after October 27, 2010.

19 **B.    Upward Adjustment of Fees**

20   Plaintiff seeks an upward adjustment of fees of $35,043.35 but not explain how he arrives at
21 this specific amount. Defendant argues that the request for an enhancement is frivolous.

22   Although this Court may not grant a fee enhancement under federal fee-shifting statutes, see,
23 e.g., City of Burlington v. Dague, 505 U.S. 557, 566-67 (1992) (holding that enhancement for
24 contingency is not permitted under fee shifting statute), California courts allow for fee
25 enhancements based on contingent risk. Ketchum v. Moses, 24 Cal. 4th 1122, 1136-38 (2001)
26 (allowing for fee enhancements to compensate for contingent risk, exceptional skill, or other
27 factors). The lodestar is the basic fee for comparable legal services in the community and may be
28 adjusted by the court based on factors such as "(1) the novelty and difficulty of the questions

1  involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the
2  litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee
3  award." Ketchum, 24 Cal. 4th at 1132. The trial court has discretion in awarding a fee
4  enhancement. Id. at 1138. The party seeking the enhancement bears the burden of proof. Id. The
5  trial court "is not *required* to include a fee enhancement to the basic lodestar figure for contingent
6  risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate
7  case." Id. (emphasis in original).
8         The California Supreme Court explained the a fee enhancement for contingent cases is
9  appropriate because it "compensates the lawyer not only for the legal services he renders but for the
10 loan of those services. The implicit interest rate on such a loan is higher because the risk of default
11 (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of
12 conventional loans." Id. at 1132-33 (citation omitted).
13        Courts have discretion to decline an enhancement based on the contingency risk factor. See
14 GH Capital, LLC v. City of Los Angeles, 2011 WL 4437841 (Ct. App. 2011) (affirming trial court's
15 decision reducing the lodestar amount from $211,900 to $125,000 and declining to award a
16 contingent multiplier in the case explaining that the trial court found that amount of attorney fees
17 was excessive for participating in 1 administrative hearing and 3 or 4 motion hearings); Wilkinson v.
18 South City Ford, 2010 WL 4292631 (Ct. App. 2010) (affirming the trial court's decision declining to
19 award a multiplier because the original fee request was excessive).
20        Plaintiff's counsel summarily argues that he is entitled to a fee enhancement because he took
21 this case on a contingency fee basis and the case involved complex legal issues requiring
22 extraordinary legal skill such as the continuing violation doctrine, the litigation privilege and
23 vicarious liability. First, the Court exercises its discretion and concludes that an enhancement based
24 on contingency risk is not warranted in this case. An award of $47,100 in attorney's fee is more
25 than reasonable to compensate for the work performed for Mario B.'s RFDCPA claim. In addition,
26 Plaintiff has not shown that this debt collection case was particularly complex. Although Plaintiff
27 claims there were complex legal issues, the only legal issue he researched was the continuing
28 violation doctrine on May 19, 2009 where he spent 3.4 hours. One entry of researching the

1  continuing violation doctrine, which the court questions as a complex legal theory, does not justify a
2  fee enhancement in this case. Other than that, no other research was done on these issues or ever
3  briefed in court papers. Plaintiff has not shown why an enhancement of $35,043.35 is warranted.
4  Accordingly, the Court DENIES Plaintiff's request for an upward adjustment of fees.

5  **C.     Motion for Costs**

6  Plaintiff also seeks $5,511.19 in costs. Defendant opposes arguing that the costs are not
7  documented and the deposition transcript fee of $4,250 is not relevant to Mario Senior's RFDCPA
8  claim since only a few questions were asked at Mario Senior's deposition regarding this claim.
9  Defendant argues that the Court should grant 1/13 of the cost of the transcript.

10  In response, Plaintiff claims that the filing fee is set by statute and the service of process and
11  copying, postal and facsimile fees are reasonable. As to the deposition costs, Plaintiff claims that
12  the requested amount represents the charges for the Chase deposition and Chase was previously
13  ordered by the Magistrate Judge to pay for those charges in docket entry no. 25. As to the subpoena
14  charge, Plaintiff explains and provides an invoice regarding the subpoena fee that was incurred when
15  Chase refused to produce the documents subpoenaed from Volvo of Orange County. (Dkt. No. 83.)

16  A moving party must establish the amount of compensable costs and expenses to which they
17  are entitled. English v. Colorado Dept. of Corr., 248 F.3d 1002, 1013 (10th Cir. 2001) (concerning
18  costs under 28 U.S.C. § 1920). According to Civil Local Rule 54.1(a), a party requesting costs must
19  provide "copies of the invoices for requested costs." Civ. Local R. 54.1(a).

20  Chase appears to believe that the deposition costs concerned Mario B. while Plaintiff states
21  that the charges were for Chase's depositions. Therefore, Plaintiff must provide an invoice as to the
22  deposition costs in order for the court to determine whether the deposition costs concerned Mario
23  B.'s RFDCPA claim. In addition, the subpoena fee for the Volvo records concerned Chase's
24  counterclaim against Mario I. and not Mario B.'s RFDCPA claim.

25  Based on the above, the Court GRANTS in part and DENIES in part Plaintiff's request for
26  costs. The Court GRANTS the cost for the filing fee, service of process and copies, postage and
27  facsimile fees in the amount of $1026.50. The Court DENIES Plaintiff's request for costs as to the
28  subpoena fee in the amount of $89.29 as it relates to Chase's counterclaim against Mario I, not

Mario B.'s RFDCPA claim. The Court DENIES without prejudice Plaintiff's request for depositions costs in the amount of $4,250.00. Plaintiff shall provide supporting documentation as to the deposition costs within ten (10) days of this order.

### Conclusion

Based on the above, the Court GRANTS in part and DENIES in part Mario B.'s motion for attorney's fees. The Court GRANTS Plaintiff **$47,141.00** in attorney's fees. The Court DENIES Plaintiff's motion for attorney's fees in the amount of 25.8 hours totaling $7,611.00 from Plaintiff's request as not concerning Mario B.'s RFDCPA claim. The Court also DENIES Plaintiff's motion for attorney's fees in the amount of 27.9 hours totaling $8,230.50 for fees incurred October 27, 2010. The Court also exercises its discretion and DENIES Plaintiff's request for an upward adjustment of the lodestar amount based on the contingency risk and complexity of the issues involved in the requested amount of $35,043.35.

The Court further GRANTS in part and DENIES in part Plaintiff's request for costs. The Court GRANTS the cost for the filing fee, service of process and copies, postage and facsimile fees in the amount of **$1026.50**. The Court DENIES Plaintiff's request for costs as to the subpoena fee in the amount of $89.29. The Court DENIES without prejudice Plaintiff's request for depositions costs in the amount of $4,250.00 for failure to provide invoices for the requested cost. Plaintiff shall provide supporting documentation as to the deposition costs within ten (10) days of this order.

IT IS SO ORDERED.

DATED: December 14, 2011

_____
Hon. Anthony J. Battaglia
U.S. District Judge